Thank you, Your Honor. May it please the Court, Theodore H. Frank, the appellant. We're simply asking for a straightforward application of the Aquedot's precedent, 654 F. 3rd. 748, where there's no effectual relief possible for the class, and the primary effect, the principal effect of class certification is to force the defendant to give money to lawyers with nothing going to the class at all. You don't certify the class, you don't let it go forward, you don't countenance the abuse of the class action system like this. Yes? But your position would seem to prohibit a company from settling a class action suit that although legally frivolous, poses a terrible public relations problem for a company. So what I need to know is, are you arguing that there can never be a nuisance settlement in the class action context? Because that could be the natural result of your argument. Well, I mean, that's what this Court held in Walgreens, that you don't encourage the economic effect. And if you look at people's incentives ex ante, they won't bring the nuisance suit in the first place if they know they can't profit from it. And that's how this Court came down just last month in the Walgreen case, where it was an ongoing problem. People would bring these strike suits to threaten to delay mergers. They were all clearly nuisance suits. They would all settle for nothing except attorney's fees. And this Court, I think correctly said that's a racket. That's not the way that Rule 23 is supposed to work. And I think this is the same sort of case. They recognized right away they had no chance for damages. They changed the suit. Please enjoin them and force them to do what they're already doing. That's settled within three months. They negotiate the attorney's fees another 18 months, showing where the priorities are. And again, the class is getting nothing out of this. And that sort of rent-seeking shouldn't be countenance. I guess the class, I mean, I guess the settlement seems to provide for more changes in subway voluntarily adopted. And it requires the company to keep those changes in place for what, four years? Wouldn't that allow consumers to make up their supposed losses by eating sandwiches that are at least 12 inches long for the next four years? Well, but then that's just saying that aqueducts . . . I'm taking a ruler to the next subway that I go to. Perhaps there are consumers that really care that much about the shape of their bread. But that's just saying that aqueducts was wrongly decided, because the aqueducts plaintiffs were also asking for injunctive relief. Please not only enjoin them to make them continue this refund program, but please make them give additional notice of the refund program and make sure that they're paying every class member, not just the 500,000 they've already paid. Apropos to almost nothing, but at page nine of the red brief . . . Which red brief? Oh, dear. One of them. Okay. It states that you did not argue that 525,000 was an unreasonable fee under a Lodestar settlement. Is that true? We did not argue that their Lodestar was greater than 525,000. We argued that the 525,000 was entirely disproportionate to any relief the class realized. Okay. What should the district judge have done in this case once it was clear that the suit was baseless? I think the judge says, why are you here? Why are you still taking up my time? I can't certify this class under aqueducts. There's nothing you can accomplish for the class because subway has already confessed their sins, and you yourself say that you don't want to seek damages for their previous short sandwiches. There's nothing here for me to do. Go away. So does that go away instruction come in the form of a Rule 56F order of summary judgment on the court's own motion after notice? I mean, what procedurally is the device in a formal sense with a judge in a situation like this? When the new complaint gets filed and there's no more money being requested for the class, and the only thing they're asking for is injunctive relief, at some point there's a status hearing. And what is it you want that they're not doing already or that they're at risk of not doing? You know, if there's evidence that subway is trying to get around, and they're twirling their mustache like Snively Whiplash thinking ways to shorten their sandwiches. Right. No, I get all that. But the judge can't dismiss the case. No, I agree that they can't dismiss their case on their own motion, but they can certainly signal, you have nothing here. Stop wasting my time. And I'm open to 1927. I'm open to Rule 11. If you really have nothing here, this isn't even de minimis. This is nothing. I think that's part of case management. What if the defendant wants a merits ruling that this claim is baseless? I mean, it seems to me that's the position subway was in in this case. It wants a ruling that the claim is baseless, so that there's a precedent out there to make sure these suits don't proliferate. Then I think the attorneys, yes, should have moved for Rule 56 saying, we fixed this, there's nothing to enjoy. The class representatives have nothing to complain about. You don't think they were punished enough, having been forced to settle for half the fees that they had already expended? I don't see that's a punishment at all. You know, Lodestar is a very profitable line of inquiry, and I'd be very happy making a living on half Lodestar. Half a million dollars is half a million dollars. That's a half a million dollars for quite a number of law firms, right? I mean, it's not a return to a single legal entity? I mean, the law firms split it up in some ways, and some had just filed copycat complaints and then didn't do any work. It's not clear why there were ten law firms getting split up there, other than perhaps, please don't oppose our motion for lead counsel status. There's nothing here that needed to be litigated by ten firms. This was never litigated. There was informal discovery where they realized that they didn't have a case, and then it settled. Once it's clear that monetary damages are foreclosed, what is the injury that is sustaining this claim? That would be a very good question to ask the plaintiffs. Why do they have standing to bring the B-2 at all? I think everybody just sort of assumed that they did, and we didn't challenge jurisdiction below. In terms, if to the extent that they have a valid claim for an injunction, then the amount in controversy is satisfied. No, I'm not questioning that, but the point I'm trying to make here is that no injury consumer fraud actions are foreclosed in many jurisdictions, or at least some jurisdictions, and perhaps on the verge of being foreclosed. I mean, there has to be an injury that the plaintiff is seeking a remedy for under the consumer fraud regime. The complaint alleged we got short sandwiches and Subway wasn't doing enough to prevent us from getting wrongly shaped bread. Right, but is that a psychic injury? I mean, what kind of injury do we have going on here? It's not a monetary injury. There's no less food being provided. That is crystal clear. I have not done the Spokio analysis of whether the plaintiffs had article 3 standing. I'm into my rebuttal time. If there are no further questions at this point, I'll go to rebuttal. Thank you, Mr. Frank. Thank you. Mr. DeRee. Good morning, Your Honors, and may it please the Court. Matt DeRee for the Plaintiffs Appellees. I just want to begin by noting the two issues that I see here. The first one is what value there was to the settlement, which goes hand-in-hand with whether or not this was a baseless suit versus a difficult-to-prove suit. And I think that's a distinction that I want to dwell on for just a minute. A baseless suit is different from a difficult-to-prove suit in the sense that here we had a suit where it became clear it was difficult to determine who were the class members because they, we jokingly said they ate the evidence, but that's absolutely true. It's difficult to prove who's in the class. And then in addition to that, it's difficult to prove damages. And to your standing point, Judge Sykes, there are certain people that do put a value on getting what they bargained for. And I understand that. But they didn't, there was no injury in that regard. They did not get what they bargained for. Well, they got the same amount of food. Right, and that's what you bargained for when you buy a sandwich. Well, there are some people that say you say you're As a matter of law, this claim is baseless. There's just no argument for consumer fraud action here. Now that we know that the sandwiches, the very few sandwiches that fell half an inch shorter than the 12 inches had the same amount of food or more because the subway customer can ask for more food in any of those foot lawns or six-inch sandwiches. So there just is no basis for consumer fraud action here. Well, for Any claim that the shape of the bread is material would be rejected as a matter of law, as frivolous. I don't necessarily agree with that point. But taking that as true, I think that the point here is that In that sense, it's on all fours with the Walgreens case. Any materiality claim here is frivolous. I understand that. But even taking that, what the appellant is asking the court to do is essentially order the defendant to fight a case. And I think Judge Rovner had a good point. No, instruct the district court to invite a motion to dismiss or use 56F and announce an intention to enter summary judgment on the court's own motion. Quick briefing, get rid of the case. Certainly, but there are costs associated with that. And there's also a value in a settlement that subway would get from the PR value of saying, we're going to implement these procedures, we're going to do right by our people. But they had already done that. Before this case was filed, they had not. That, I don't think that there's any support in the record for the fact that subway was going to do this or anything was going to be different on this matter. The original case in this matter was filed before there was any public statement made. In addition to that, after there were public statements made, all they said was, we're going to redouble our efforts to try hard to make sure that their foot longs. But there was no guarantee of what they were going to do. I mean, if you actually look at the relief that was granted here, it's four years long. There's a lot of different things that they do at the restaurant during their quality control process, going in, updating their manual. I mean, that is a very, it's a large footprint of a scheme that's going to keep them in compliance with this. So there was some meaningful relief here that was given to the class. And that was done as a, and it's in the judge's order, it's in the record many times, it was as a result of this litigation. How is that meaningful relief to subway customers who purchased sandwiches from 2003 to 2015? It provides no remedy. And apart from its general meaninglessness on the merits, it provides no remedy to that group. Well, that, and that's what the issue is. After it became apparent that there was no remedy to provide for that group on damages, that's why the focus switch is perhaps. Not only on the merits, but because there's no basis for the court to order a remedy. Well, I think that's a standing issue, and that wasn't necessarily addressed. No, it could be a standing issue or it could be a merits issue. It could be. Now, one thing I do want to say on that point, since that didn't come up, because the parties engaged in mediation right away and there wasn't a chance to really develop a record, there were certain facts that came out in the mediation that may change that calculus a little bit. For example, subway found out through this more stringent inspection process that some of the dough sticks actually were undersized, that there were people getting less food. Now, I understand that's on the record. If the court wants to remand to develop that issue, if there was a standing concern, we're more than happy to do it. But for those people, it's difficult to pick them out of the class of everyone that bought subs. I understand that, but those people would have valid claims, and the injunctive relief would make sure that those underweight breadsticks that make it to the store would be caught, and there would be a meaningful relief in that, even assuming that the aesthetic value doesn't matter, which I think for a lot of people it does. There was a reason that this got such high level of media attention. They have a ubiquitous $5 footlong campaign. There's a lot of people that say, you say footlong, I want footlong. Now, whether or not if that's a matter of law, if that's a claim, that's not necessarily something that- It just does not pass the laugh test. I understand. But the other point I want to get to on this is that when plaintiff's counsel filed this case and there was a serious concern about undersized bread, that people were actually getting shorted, and then it becomes clear to plaintiff's counsel, doing the best we can for the class, and that's where I want to tie this in with Walgreens and some of the other cases. Plaintiff's counsel and class counsel, their job is to get some sort of relief for the class, some sort of anything that they can on behalf of their clients, and so unlike Walgreens- After first finding out whether there's a viable claim for consumer fraud, there was- No investigation was done pre-suit, so far as I can tell. There was. The suits were filed within days of the Australian Kids post that went viral. Plaintiff's counsel and consumers- It was opportunistic entirely. Plaintiff's counsel and consumers don't have access to the dosix. They don't have access to the procedures. The only thing they could go by is buying a sandwich and essentially measuring it, which is actually something that's going to be done now at the point of sale before something's purchased. But regardless, what I want to get to is the fairness issue on this, is in the cases that this court has seen and in the Walgreens case, those were cases where there's a case filed and there was more class relief that could be granted. The class could possibly get more. There's damages claims. That was the case in Aquedots. The class- Essentially what happened was the class was going to have to take less in Aquedots than they otherwise would have gotten voluntarily. Same thing with Walgreens. There maybe could have been some sort of other sort of claim, but class counsel agreed to a lesser settlement. And these other cases where there's this concern about quote-unquote selling out the class for higher attorney's fees, those happen in circumstances where there is more relief possible, but they decide to take some sort of lesser amount and increase the fees. Here, something I really want to- I think is really meaningful, is the fact that the injunctive relief was negotiated and planned out before fees were even touched. The incentive structure at that point was that Subway was going to try to negotiate the best possible deal for Subway, and the plaintiff's counsel was trying to negotiate the best possible deal for the plaintiffs and the class. Then it was bifurcated, and when fees were addressed at a later point in time, again, Subway is trying to negotiate the lowest possible fees, and plaintiff's counsel is trying to negotiate up to their lodestar, which they only got half of in this case. So I understand the incentive issues in these other prior cases before this court, but I just don't think that they were present here because both sides had the incentive to do the best by the respective clients, and plaintiff's counsel and class counsel had the incentive to do the best for the class. So for those reasons, that's why these cases differ from the other cases that we've seen, and it differs from Walgreens because there was no selling out here. It was plaintiff's counsel doing the best they could with what turned out to be some bad facts. I believe that I'm going to be going over in a time for my co-arguing, so I appreciate the court's time on this issue. Thank you, Mr. Dorais. Mr. Babin. Thank you, and may it please the court. Doctors Associates, the franchisor of Subway, appreciates the concerns. It certainly could have ridden this out to sort of glory on the merits and won this case and believes it could very much win this case on the merits, but it made a decision in the midst of a media frenzy, social media, in terms of when the lawsuits continued a bit of the media frenzy, made a business decision to settle. It's really not for Mr. Frank to decide whether I think Doctors Associates should or shouldn't make that business decision. No, what we're talking about is what the court's obligation in a situation like this is. Certainly. To avoid abuses of the legal system such as this case represents, and our instructions in Walgreens were very clear. A class action that seeks only worthless benefits for the class should be dismissed out of hand. Certainly. That's what should have happened here. And we appreciate very much, actually, the concerns that have been expressed in those cases as a defendant. Right. This is a racket in every sense that Walgreens was, perhaps more so. But, you know, to the extent that there are differences, certainly, I can point those out because we did come here today to simply be done with the litigation and have this affirmed. Forgive me, but if the underlying suit is meritless and a litigation class could not be certified, why should a settlement class be certified? Are you essentially arguing that defendants in frivolous class actions need an effective exit? Is that your argument here? Well, we certainly were looking for an effective exit, and it is true that in light of the realities of the situation and the litigation that continued to fuel this, leading to national media, morning television shows, that we. What a wonderful opportunity to go on national television. Sure. And say every one of these sandwich eaters got exactly the amount of sandwich that they paid for. Yeah. Gosh. Well, Doctors Associates didn't want to speak ill of its customers on national television, as opposed to speaking ill of the claims brought by the lawyers. But there ultimately is a real difference. In Walgreens and in Aquedots, the relief that was provided was meaningless. Here we, in fact, did roll out actual changes. And it's not easy to do that on a dime with 25,000 franchisees in order, and we changed the standards. We have now new standards in our manuals that are enforceable with the franchisees. We have new bread forms. Those are meaningless. I mean, they may be meaningful as a part of your own PR. It does cheer up the operation. That is true. Right. But there's still, according to what the record shows, a chance that a sub-sandwich roll is going to be less than 12 inches long, for a foot long, because of the vagaries of the way yeast rises. Yes, that's right, although we've changed the tolerance in terms of them serving that bread. And so there is a system change. Wait a minute. Are you saying that the young teenager selling Subway sandwiches is standing there with a ruler? Well, there is a measuring tool that's on this, and we do send development agents out every month with the new operations manual to enforce the standards. I'm certain that there are teenagers who may or may not do that, but rolling this out on a system-wide basis was something. You could say the same for the disclosures involved. But I also want to make an important legal point, which is that at the end of the day, Mr. Frank's argument actually wasn't about whether this is fair, reasonable, and adequate. His whole argument was based on aqueducts and the timing of the changes. And I think that's just important so we get at least the legal framework correct. That is, I don't believe that if practice changes that are put into effect as a result of litigation, before there's a motion for class certification, prevents, if the case is in frivolous, prevents later memorialization of that relief, whether in a class-wide judgment, if we don't settle and we decide to push this forward and somehow the reason it goes to trial, or in a class-wide settlement. Aqueducts doesn't go that far. Aqueducts was a B3 class. That was not a settlement. It was opposed. So I do want to be sure that in terms of being able to settle, if there is a meaningful claim and if there is a meaningful relief, that the timing of it and being able to then put that into an enforceable judgment on a class-wide basis isn't precluded by aqueducts. Do you agree that once it was understood by all that there was no shortage of food provided, that there remains an injury to be remedied? Your brief said there was no injury after that point. We don't believe that they could ever prove materiality. They couldn't prove, and certainly from a damages standpoint. We can, obviously, from a B2 standpoint, even if they can't prove their claims, we can roll out changes that are uniform. What legal injury is being remedied by this lawsuit once the truth was known? I don't believe there's any realistic chance of an ultimate decision for the plaintiffs on the merits. I would agree with that. Well, you should just wait because the bologna is going to be measured, and the cheese, the lettuce, the seeds, and the tomato. Okay. But unless there are other questions, I don't have anything further. All right. Thank you, Mr. Bannon. Thank you. Mr. Fry? One quick point. We keep hearing about the meaningful relief, but on page 29 of Dr. Associates' brief, they say they would be doing the same thing if the district court rejected the settlement, and that's the very definition of immaterial. There's no marginal difference between having a settlement and not having a settlement. The class is in the same boat. I'm happy to answer any questions you might have. Thank you. Do you eat Subway sandwiches? As a member of the class, I do. I preferred it when they had the V-cut, but I still partake from time to time. Thanks to all counsel. Case is taken under advisement.